# United States Court of Appeals for the Federal Circuit

---

**FACEBOOK, INC.,**
*Appellant*

**v.**

**WINDY CITY INNOVATIONS, LLC,**
*Cross-Appellant*

---

2018-1400, 2018-1401, 2018-1402, 2018-1403, 2018-1537, 2018-1540, 2018-1541

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2016-01156, IPR2016-01157, IPR2016-01158, IPR2016-01159, IPR2017-00659, IPR2017-00709.

---

OPINION ISSUED: March 18, 2020
OPINION MODIFIED: September 4, 2020*

---

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, argued for appellant. Also represented by ANDREW CARTER MACE, LOWELL D. MEAD, MARK R. WEINSTEIN; ELIZABETH

---

\*   This opinion has been modified and reissued following a combined petition for panel rehearing and rehearing en banc filed by Appellant.

PRELOGAR, Washington, DC. Also argued by PHILLIP EDWARD MORTON.

VINCENT J. RUBINO, III, Fabricant LLP, New York, NY, argued for cross-appellant. Also represented by ALFRED ROSS FABRICANT, ENRIQUE WILLIAM ITURRALDE, PETER LAMBRIANAKOS.

JEREMY COOPER DOERRE, Tillman Wright PLLC, Charlotte, NC, as amicus curiae, pro se.

JOSHUA KOPPEL, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for amicus curiae United States. Also represented by JEFFREY ERIC SANDBERG, SCOTT R. MCINTOSH, ETHAN P. DAVIS; THOMAS W. KRAUSE, JOSEPH MATAL, FARHEENA YASMEEN RASHEED, MOLLY R. SILFEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

DAVID E. BOUNDY, Cambridge Technology Law LLC, Newton, MA, as amicus curiae, pro se.

————————————

Before PROST, *Chief Judge*, PLAGER and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST, in which PLAGER and O'MALLEY, *Circuit Judges*, join.

Additional views filed by *Chief Judge* PROST and *Circuit Judges* PLAGER and O'MALLEY.

PROST, *Chief Judge*.

Windy City Innovations, LLC ("Windy City") filed a complaint accusing Facebook, Inc. ("Facebook") of infringing U.S. Patent Nos. 8,458,245 ("the '245 patent"); 8,694,657 ("the '657 patent"); 8,473,552 ("the '552 patent"); and 8,407,356 ("the '356 patent"). In June 2016, exactly one year after being served with Windy City's complaint,

Facebook timely petitioned for inter partes review ("IPR") of several claims of each patent. At that time, Windy City had not yet identified the specific claims it was asserting in the district court proceeding. The Patent Trial and Appeal Board ("Board") instituted IPR of each patent. In January 2017, after Windy City had identified the claims it was asserting in the district court litigation, Facebook filed two additional petitions for IPR of additional claims of the '245 and '657 patents, along with motions for joinder to the already-instituted IPRs on those patents. By the time of that filing, the one-year time bar of § 315(b) had passed. The Board nonetheless instituted Facebook's two new IPRs, granted Facebook's motions for joinder, and terminated the new IPRs.

In the final written decisions, the Board delivered a mixed result, holding that Facebook had shown by a preponderance of the evidence that some of the challenged claims are unpatentable as obvious but had failed to show that others were unpatentable as obvious. Importantly, many of the claims the Board found unpatentable were claims only challenged in the late-filed petitions. Facebook appealed, and Windy City cross-appealed on the Board's obviousness findings. In its cross-appeal, Windy City also challenges the Board's joinder decisions allowing Facebook to join its new IPRs to its existing IPRs and to include new claims in the joined proceedings.

For the reasons explained below, we hold that the Board erred in its joinder decisions in allowing Facebook to join itself to a proceeding in which it was already a party, and also erred in allowing Facebook to add new claims to the IPRs through that joinder. Because joinder of the new claims was improper, we vacate the Board's final written decisions as to those claims, but because we lack authority to review the Board's institution of the two late-filed petitions, we remand to the Board to consider whether the termination of those proceedings finally resolves them.

We also hold that the Board's obviousness determinations on the originally instituted claims are supported by substantial evidence. We therefore affirm-in-part, vacate-in-part, and remand the Board's final written decisions on the '245 and '657 patents, affirm the Board's final written decision on the '552 patent, and affirm-in-part the Board's final written decision on the '356 patent. We dismiss as moot Facebook's appeal of the Board's final written decision on the '356 patent with respect to claims 14 and 33.

I

A

The '245, '657, '552, and '356 patents share a common specification and claim priority to a patent application filed on April 1, 1996.[1] The patents are generally related to methods for communicating over a computer-based network. The specification discloses a system with a "controller computer [1]," a plurality of "participator computers 5," and a "connection 13," linking the controller computer with each of the participator computers, as shown in Figure 1 below.

---

[1]    For convenience, references to the specification cite only the '245 patent.

**FIG. 1**



'245 patent at col. 4 l. 65–col. 5 l. 18, fig. 1. The specification describes "provid[ing] a chat capability suitable for handling graphical, textual, and multimedia information." *Id.* at col. 2 ll. 15–17.

Two features described in the specification are relevant to this appeal: (1) the ability to handle "out-of-band" multimedia information, i.e., information that a receiving computer may be unable to present on its own; and (2) the ability to control the dissemination of information among participator computers, which is referred to in the patents as "censorship" of content. The '245 patent claims relate to the "out-of-band" feature, and the '657, '552, and '356 patent claims relate to the "censorship" features. These features are discussed in more detail in Part II.B when addressing the technical merits of the appeal and cross-appeal.

B

On June 2, 2015, Windy City filed a complaint against Facebook alleging infringement of the '245, '657, '552, and '356 patents ("the asserted patents") in the U.S. District Court for the Western District of North Carolina. Windy City's complaint did not specify which claims of the four asserted patents (collectively having a total of 830 claims) Facebook allegedly infringed. *See* J.A. 7996–8006 (alleging

infringement of "claims of the patents-in-suit"). Facebook was served with the complaint on June 3, 2015, starting the statutory one-year clock for Facebook to file petitions for IPR of the asserted patents. *See* 35 U.S.C. § 315(b).

On July 24, 2015, Facebook filed a motion to dismiss, arguing that the complaint did not provide adequate notice of Windy City's infringement allegations because it did not identify which claims were asserted against which Facebook products. On August 25, 2015, Facebook filed a motion to transfer the case to the U.S. District Court for the Northern District of California. The North Carolina district court did not rule on either motion for several months. On March 16, 2016, the North Carolina district court granted Facebook's motion to transfer but did not rule on Facebook's motion to dismiss.

Upon transfer to the Northern District of California, the district court issued a scheduling order on April 6, 2016, setting a case management conference for July 7, 2016.[2] Under Northern District of California Patent Local Rule 3-1, Windy City would be required to identify its asserted claims 14 days later—more than one month *after* the expiration of the one-year time bar to file petitions for IPR of the asserted patents. On May 4, 2016, with the one-year bar date approaching, Facebook filed a motion asking the district court to order Windy City to identify no more than 40 asserted claims by May 16, 2016. The district court denied the motion on May 17, 2016.

On June 3, 2016, the last day of the one-year window, Facebook filed a petition for IPR of each of the four asserted patents. The petitions challenged some, but not all, of the claims of each patent. Specifically, Facebook challenged claims 1–15, 17, and 18 of the '245 patent; claims 189, 334,

---

[2]    The case management conference was ultimately held at a later date.

342, 348, 465, 580, 584, and 592 of the '657 patent; claims 1–61 and 64 of the '552 patent; and claims 1–9, 12, 14–28, 31, and 33–37 of the '356 patent. The Board instituted review of all of the challenged claims and grounds in the petitions, except for claims 60 and 61 of the '552 patent.[3]

More than four months after the one-year deadline to file IPRs, on October 19, 2016, Windy City identified the claims of each patent that it was asserting in the district court case. Some of the claims of the '245 and '657 patents that Windy City asserted were claims that Facebook had not challenged in its petitions for IPR of those patents. Facebook then prepared two additional petitions for IPR challenging these additional asserted claims. Specifically, these petitions challenged claims 19 and 22–25 of the '245 patent and claims 203, 209, 215, 221, 477, 482, 487, and 492 of the '657 patent. Because the petitions would otherwise have been time-barred under 35 U.S.C. § 315(b), Facebook filed the petitions along with motions asking the Board to join each new proceeding to the already-instituted IPR on the same patent under § 315(c). Windy City opposed the motions for joinder.

The Board instituted Facebook's late-filed petitions and granted Facebook's motions for joinder, allowing the

---

[3] The Board's institution decisions were issued prior to the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), which held that the Director cannot institute on fewer than all of the claims challenged in the petition. In this case, no party seeks *SAS*-based relief. "[A]lthough [*SAS*] now makes clear that the Board erred in limiting the scope of the IPRs it instituted and hence the scope of its final written decisions, we have jurisdiction to address the merits of the Board's final written decisions and . . . we need not, and will not, sua sponte revive the 'non-instituted' claims and grounds." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1357 (Fed. Cir. 2018).

newly challenged claims to be added to the proceedings. *See* J.A. 7385–402, 8162–76.  In the same order, the Board also terminated the newly instituted proceedings. J.A. 7399, 8172.

In considering whether to grant the motions for joinder, the Board reasoned that "although the newly challenged claims are not identical" to those challenged in the original petitions, "the substance is very similar such that the addition of [the new] claims . . . is not likely to affect the scope of the trial significantly."  J.A. 7393; *see also* J.A. 8168–69.  The Board also noted that joinder would not significantly disrupt the trial schedule, briefing, or discovery.  J.A. 7394, 8169.  In addition, the Board determined that Facebook did not unduly delay in challenging the new claims in the second petitions filed with the motions for joinder.  J.A. 7394–97, 8169–71.  The Board agreed with Facebook that Windy City's district court complaint generally asserting the "claims" of the asserted patents "cannot reasonably be considered an allegation that Petitioner infringes all 830 claims of the several patents asserted." J.A. 7395; *see also* J.A. 8170.  The Board therefore found that Facebook could not have reasonably determined which claims were asserted against it within the one-year time bar.  *See* J.A. 7395–96, 8170.  Once Windy City identified the asserted claims after the one-year time bar, the Board found that Facebook did not delay in challenging the newly asserted claims by filing the second petitions with the motions for joinder.  J.A. 7397, 8170.  For each new petition, the Board held that Facebook "has established good cause for joining this proceeding with the [existing] IPR." J.A. 8172.  Accordingly, the Board ordered that each new IPR "is hereby joined with" the corresponding existing IPR.

Two Administrative Patent Judges ("APJs") on the panels joined concurring opinions, raising "concerns with permitting a party to, essentially, join to itself."  J.A. 7400; *see also* J.A. 8173.  In their view, "§ 315(c), when properly interpreted, does not authorize same-party joinder because

a party cannot be joined to a proceeding 'as a party' if it already is a party to that proceeding." J.A. 7401, 8174. While this view was shared by two of the three APJs on the panel, it was expressed in a concurring opinion because, "the Director repeatedly has taken the position . . . that such same-party joinder is permitted by § 315(c)" and the concurring APJs agreed to follow that position in this case, "[d]espite [their] disagreement with the Director's interpretation." J.A. 7401 (citing Brief for Intervenor – Director of the United States Patent and Trademark Office at 32–39, *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013 (Fed. Cir. 2017) (No. 16-2321)); *see also* J.A. 8174–75 (same). Over the concerns expressed in the concurrence, Facebook was permitted to join its otherwise time-barred IPR proceedings to instituted IPR proceedings where it was already a party.

In its final written decision on the '245 patent (which considered the claims challenged in the original petition as well as the second petition filed with the motion for joinder), the Board held that Facebook had failed to show by a preponderance of the evidence that claims 1–15, 17–19, and 22–25 are unpatentable as obvious. *Facebook, Inc. v. Windy City Innovations, LLC*, No. IPR2016-01156, Paper 52, at 34 (P.T.A.B. Dec. 6, 2017) ("*'245 Final Written Decision*").

In its final written decision on the '657 patent (which also considered the claims challenged in both the original petition and the second petition), the Board held that Facebook had shown by a preponderance of the evidence that claims 189, 334, 342, 348, 465, 477, 482, 487, 492, 580, 584, and 592 are unpatentable as obvious but had failed to show that claims 203, 209, 215, and 221 are unpatentable as obvious. *Facebook, Inc. v. Windy City Innovations, LLC*, No. IPR2016-01159, Paper 52, at 56 (P.T.A.B. Dec. 6, 2017) ("*'657 Final Written Decision*").

In its final written decision on the '552 patent, the Board held that Facebook had shown by a preponderance of the evidence that claims 2, 3, 5, 7, 10–17, 59, and 64 are unpatentable as obvious but had failed to show that claims 1, 4, 6, 8, 9, and 18–58 are unpatentable as obvious. *Facebook, Inc. v. Windy City Innovations, LLC*, No. IPR2016-01158, Paper 47, at 59 (P.T.A.B. Dec. 6, 2017) ("*'552 Final Written Decision*").

In its final written decision on the '356 patent, the Board held that Facebook had shown by a preponderance of the evidence that claims 1–9, 12, 15–28, 31, and 34–37 are unpatentable as obvious but had failed to show that claims 14 and 33 are unpatentable as obvious. *Facebook, Inc. v. Windy City Innovations, LLC*, No. IPR2016-01157, Paper 47, at 59 (P.T.A.B. Dec. 6, 2017) ("*'356 Final Written Decision*").

Facebook timely appealed, and Windy City cross-appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

II

On appeal, Facebook argues that the Board erred in finding that Facebook failed to prove that claims 1–15, 17–19, and 22–25 of the '245 patent; claims 203, 209, 215, and 221 of the '657 patent; claims 1, 4, 6, 8, 9, and 18–58 of the '552 patent; and claims 14 and 33 of the '356 patent are unpatentable as obvious over the instituted grounds.

In its cross-appeal, Windy City argues that the Board erred in finding that a person of ordinary skill in the art would have been motivated to combine the prior art references in each IPR. Windy City also appeals the Board's joinder decisions, arguing that they were improper because 35 U.S.C. § 315(c) does not authorize same-party joinder and does not authorize joinder of new issues.

We begin by addressing the Board's joinder decisions raised in Windy City's cross-appeal. We then turn to the

technical merits presented in Facebook's appeal and Windy City's cross-appeal.

## A

In its cross-appeal, Windy City argues that the Board's decisions granting joinder were improper and should be reversed. Windy City presents two issues of statutory interpretation: whether 35 U.S.C. § 315(c) permits a person to be joined as a party to a proceeding in which it was already a party ("same-party" joinder); and whether it permits new issues to be added to an existing IPR through joinder ("new issue" joinder), including issues that would otherwise be time-barred.

### 1

Statutory interpretation is an issue of law that we review de novo. *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016). "In statutory construction, we begin 'with the language of the statute.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). Our "first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart*, 534 U.S. at 450 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

### 2

35 U.S.C. § 315 governs the relationship between IPRs and other proceedings. Sections 315(b) and (c) recite:

**(b) Patent Owner's Action.**—An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

**(c) Joinder.**—If the Director institutes an inter partes review, the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition under section 311 that the Director, after receiving a preliminary response under section 313 or the expiration of the time for filing such a response, determines warrants the institution of an inter partes review under section 314.

3

As a threshold issue, Facebook and the United States Patent and Trademark Office ("PTO") as amicus curiae argue that we do not have jurisdiction to review the Board's joinder decisions in this case. We disagree.

Facebook and the PTO rely on 35 U.S.C. § 314(d), which provides that "[t]he determination by the Director to institute an inter partes review under this section shall be final and nonappealable." In *Cuozzo Technologies, LLC v. Lee*, the Supreme Court held that § 314(d) overcomes the "strong presumption" favoring judicial review to preclude review of the Board's institution decision where the grounds for attacking that decision "consist of questions that are closely tied to the application and interpretation of statutes related to the [PTO's] decision to initiate inter partes review." 136 S. Ct. 2131, 2140–41 (2016). Applying § 314(d) in *Cuozzo*, the Court specifically held that we may

not review an institution decision on the basis that the petition did not satisfy the requirements of 35 U.S.C. § 312(a)(3), which states that the petition must identify the grounds of challenge "with particularity." *Id.* at 2142. The Court explained that an argument that the "petition was not pleaded 'with particularity' under § 312 is little more than a challenge to the PTO's conclusion, under § 314(a), that the 'information presented in the petition' warranted review." *Id.*

The Supreme Court next considered § 314(d) in *SAS Institute, Inc. v. Iancu*, where it concluded that the statute does not preclude judicial review of the Board's decision to institute fewer than all of the claims challenged in an IPR petition. 138 S. Ct. 1348, 1359–60 (2018). The Court explained that while § 314(d) precludes review of whether there is a "reasonable likelihood that the claims are unpatentable on the grounds asserted," the statute does not "enable the agency to act outside its statutory limits," and thus, that § 314(d) does not preclude review where the agency has "exceeded [its] statutory authority." *Id.* at 1359 (internal citations omitted).

More recently in *Thyrv, Inc. v. Click-to-Call Technologies, LP*, the Supreme Court held that the PTO's application of § 315(b)'s time bar is "closely related to its decision whether to institute inter partes review and is therefore rendered nonappealable by § 314(d)." 140 S. Ct. 1367, 1370 (2020). The Court explained that § 315(b)'s "time limitation is integral to, indeed a condition on, institution" and concluded that "[a] challenge to a petition's timeliness under § 315(b) thus raises 'an ordinary dispute about the application of' an institution-related statute." *Id.* at 1373 (quoting *Cuozzo*, 136 S. Ct. at 2139). Furthermore, the Court distinguished *SAS*, explaining that unlike the issue in *SAS*, the review of a petition's timeliness challenges "whether the agency should have instituted review at all," not "the manner in which the agency's review proceeds once instituted." *Id.* at 1376.

According to Facebook, the Supreme Court's decision in *Thryv* confirms that § 314(d) precludes review "of the PTO's decision to institute a second IPR and join it to an existing IPR." Appellant's Supp. Br. 1.[4] In particular, Facebook emphasizes that § 315(c) requires a request for joinder to be accompanied by a petition for IPR, and argues that therefore "Windy City's attack on joinder is that the follow-on IPRs should not have been instituted at all." *Id.* at 9, 11–12.

The PTO similarly, though more narrowly, argues that "[a]t least where the Board institutes an inter partes review on a petition that would otherwise be untimely, the Board's application of section 315(c) is 'integral to, indeed a condition on, institution.'" PTO Supp. Br. 6.[5] The PTO, however, expressly states that:

> This case does not require the Court to address whether section 314(d) would bar review of a joinder decision when reversal would not have the effect of reversing the [PTO's] institution decision— for example, when the [PTO] grants the joinder motion of a party who filed a petition within, rather than after, the one-year time limitation of section 315(b).

PTO Supp. Br. 11 n.1. Thus, the PTO does not argue that § 314(d) precludes judicial review of all Board joinder decisions, but instead argues that the statute precludes review where the petition filed with that request would otherwise have been untimely.

---

[4]    "Appellant's Supp. Br." refers to Facebook's supplemental brief, ECF No. 107, filed June 10, 2020.

[5]    "PTO Supp. Br." refers to the PTO's brief for the United States as amicus curiae, ECF No. 106, filed June 10, 2020.

In contrast, Windy City argues that the Board's joinder decisions in this case are "a separate procedural process with separate requirements and a different purpose than institution." Appellee's Supp. Br. 2.[6] Windy City further argues that its appeal of the Board's joinder decisions in this case challenges whether the Board "exceeded the scope of its statutory authority under § 315(c) by granting Facebook's motions for joinder." *Id.* at 1–2; *see also id.* at 10. According to Windy City, like *SAS*, its appeal does not "challenge a *conclusion* by the Board that the requirements of initiating review under § 314 were satisfied," but challenges the Board's joinder decisions in "*already-instituted IPRs*." *Id.* at 10. We agree with Windy City.

To join a party to an instituted IPR, the plain language of § 315(c) requires two different decisions. First, the statute requires that the Director (or the Board acting through a delegation of authority, *see* 37 C.F.R. §§ 42.4(a), 42.122)) determine whether the joinder applicant's petition for IPR "warrants" institution under § 314. We may not review this decision, whether for timeliness or to consider whether the petitioner is likely to succeed on the merits. *See Thryv*, 140 S. Ct. at 1373 ("[Section] 314(d) bars review at least of matters 'closely tied to the application and interpretation of statutes related to' the institution decision." (quoting *Cuozzo*, 136 S. Ct. at 2141)).

Second, to effect joinder, § 315(c) requires the Director to exercise his discretion to decide whether to "join as a party" the joinder applicant. That is, the statute requires the Director (or the Board on behalf of the Director) to make a "joinder decision." *See* PTO Supp. Br. 10. The statute makes clear that the joinder decision is made *after* a determination that a petition warrants institution, thereby affecting the manner in which an IPR will proceed. *See*

---

6    "Appellee's Supp. Br." refers to Windy City's supplemental brief, ECF No. 108, filed June 10, 2020.

*Thryv,* 140 S. Ct. at 1377. Thus, the joinder decision is a separate and subsequent decision to the intuition decision. Nothing in § 314(d), nor any other statute, overcomes the strong presumption that we have jurisdiction to review that joinder decision.

In this case, Windy City's cross-appeal does not challenge the Board's decision to institute Facebook's follow-on petitions, but challenges whether the Board's joinder decisions exceeded the statutory authority provided by § 315(c). Windy City's appeal, therefore, is unlike the challenges raised in *Cuozzo* and *Thryv,* which specifically sought review of petitions that the Board had instituted and the decisions to institute those petitions, which therefore were barred by § 314(d). Instead, Windy City's appeal of the Board's joinder decisions is more like the reviewable challenge in *SAS,* which concerned whether the PTO had exceeded its statutory authority as to the manner in which the already-instituted IPR proceeded.

Accordingly, we have jurisdiction to review the Board's joinder decisions in this case to determine whether the Board (on behalf of the Director) acted outside any statutory limits under § 315(c).

4

Because we have jurisdiction to review the Board's joinder decisions in this case, we now turn to the merits of Windy City's cross appeal. Windy City argues that § 315(c) does not authorize same-party joinder and also that it does not authorize joinder of new issues material to patentability, such as new claims or new grounds. Facebook disputes both points, arguing that § 315(c) authorizes same-party joinder and that it does not prohibit joinder of new issues.[7]

---

[7]    Facebook also argues that Windy City waived its arguments challenging the Board's joinder decisions by

Both Windy City and Facebook contend that the statute is clear and unambiguous in favor of their respective interpretations. *See* Cross-Appellant's Response Br. 40, 44; Appellant's Reply and Response Br. 28, 31.

We agree with Windy City on both points. The clear and unambiguous text of § 315(c) does not authorize same-party joinder, and does not authorize the joinder of new issues. Beginning with the statutory language, § 315(b) articulates the time-bar for when an IPR "may not be instituted." 35 U.S.C. § 315(b). But § 315(b) includes a specific exception to the time bar. By its own terms, "[t]he time limitation . . . shall not apply to a request for joinder under subsection (c)." *Id.*

---

failing to raise them before the Board. But Windy City opposed Facebook's motions for joinder, arguing that "[g]ranting joinder would result in Facebook circumventing . . . statutory limitations on petitioners, all within the Board's familiarity . . . ." J.A. 7371, 8147. The Board was quite familiar with the issue, as evidenced by the concurring opinion, where two APJs expressed the view that "§ 315(c), when properly interpreted, does not authorize same-party joinder because a party cannot be joined to a proceeding 'as a party' if it already is a party to that proceeding." J.A. 7401, 8174. The concurring opinion also noted its "disagreement with the Director's interpretation" of § 315(c) permitting same-party joinder. J.A. 7401, 8174–75. Moreover, Windy City sought a writ of mandamus challenging the joinder decisions, which we denied while noting that "it is clear that Windy City will have an opportunity in the relatively near future to address its concerns through a response or cross-appeal" in this case. *In re: Windy City Innovations, LLC*, No. 18-102, ECF No. 19, at 3 (Fed. Cir. 2018) (per curiam). Windy City has not waived its right to challenge the Board's joinder decisions.

The joinder provision, § 315(c), states: "If the Director institutes an inter partes review, the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition under section 311 that the Director . . . determines warrants the institution of an inter partes review under section 314."  35 U.S.C. § 315(c).  The plain language of § 315(c) indicates that the exception to the time bar offered by the joinder provision only applies if there is an instituted IPR.  Subsection (c) then provides that after an inter partes review has been instituted, the Director, in his or her discretion, "*may join*" "*as a party to that inter partes review*" "*any person*" who has filed "a petition under section 311 that the Director . . . determines warrants the institution of an inter partes review under section 314."  35 U.S.C. § 315(c) (emphases added).

5

We first address whether the language of § 315(c) authorizes same-party joinder, *i.e.*, the joinder of a person as a party to a proceeding in which it is already a party.  As an initial matter, however, we note that this is not what the Board purported to be doing in the proceedings at issue.

As described above, the plain language of § 315(c) allows the Director "to join *as a party* [to an already-instituted IPR] any *person*" who meets certain requirements. 35 U.S.C. § 315 (emphases added).  When the Board instituted Facebook's later petitions and granted its joinder motions, however, the Board did not purport to be joining anyone *as a party*.  Rather, the Board understood Facebook to be requesting that its later *proceedings* be joined to its earlier *proceedings*.  J.A. 8163 ("Facebook filed a Motion for Joinder . . . requesting that this proceeding be joined with [its prior IPR]").  It granted this request accordingly. J.A. 8172 ("Further Ordered that IPR2017-00709 is hereby joined with IPR2016-01156").  In other words, an essential premise of the Board's decision was that § 315(c) authorizes

two *proceedings* to be joined, rather than joining a person *as a party* to an existing proceeding.

That understanding of § 315(c) is contrary to the plain language of the provision. Section 315(c) authorizes the Director to "join as a party to [an IPR] any person who" meets certain requirements, i.e., who properly files a petition the Director finds warrants the institution of an IPR under § 314. No part of § 315(c) provides the Director or the Board with the authority to put two proceedings together. That is the subject of § 315(d), which provides for "consolidation," among other options, when "[m]ultiple proceedings" involving the patent are before the PTO. 35 U.S.C. § 315.

The difference between joining two proceedings and joining a person "as a party" is a matter of the plain meaning of familiar legal terms. Courts construe legal terms in a statute to have their customary, ordinary meaning in law unless there is a strong reason to infer a departure from that meaning. *See, e.g.*, *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 101 (2011) ("[W]here Congress uses a common-law term in a statute, we assume the term . . . comes with a common law meaning, absent anything pointing another way." (internal quotation marks omitted)). Facebook has not identified any customary, ordinary usage of "joining a person as a party to a proceeding" as referring to combining the proceedings, or any indication of a congressional intent to depart from the normal usage that keeps these things distinct. Indeed, the statute recognizes the difference by addressing joinder in § 315(c) and consolidation in § 315(d). Counsel and judges in all federal proceedings are familiar with this distinction. For example, the difference between Federal Rules of Civil Procedure 19 and 20 (relating to joinder of persons), and Rule 42 (relating to consolidation of proceedings), generally parallels the difference between § 315(c) and § 315(d). Accordingly, the unambiguous language of § 315(c) does not provide for two proceedings to be joined, as the Board purported to order here.

We recognize that, notwithstanding the language it used, the Board may have been intending to convey that it was joining Facebook as a party to its previously instituted IPRs, and not joining the newly instituted IPR proceedings themselves. In their concurrence, for example, APJs McKone and Lee referred to the majority opinion as "permitting a party to, essentially, join to itself." J.A. 7400. The parties themselves appear to have interpreted the Board's decision this way, and have conducted this appeal accordingly. *See, e.g.,* Cross-Appellant's Response Br. 16 ("the Board . . . allowed Facebook to join its own previously-filed IPRs"); Appellant's Reply and Response Br. 31 ("the Board . . . join[ed] Facebook to the previously-instituted IPRs . . . so called 'same-party' joinder").

Assuming that the Board in fact joined Facebook "as a party" to its existing IPRs, the question before us is whether § 315(c) authorizes a person to be joined as a party to a proceeding in which it is already a party. The clear and unambiguous language of § 315(c) confirms that it does not. *See Thryv,* 140 S. Ct. at 1374 (considering the statutory design of the America Invents Act ("AIA") and observing that "the §315(b)-barred party can join a proceeding initiated by *another* petitioner" (emphasis added)). Subsection (c) allows the Director to "join as a party to [an IPR] any person who" meets certain threshold requirements. It would be an extraordinary usage of the term "join as a party" to refer to persons who were already parties. Again, under the Federal Rules of Civil Procedure for example, joinder of a person as a party is uniformly about adding someone that is not *already* a party. We are not aware of any legal context in which a person is permitted to join "as a party" to a proceeding in which it is already a party. Again, we must construe legal terms in a statute to have their customary, ordinary meaning in law unless there is a strong reason to infer a departure from that meaning. *See, e.g., Microsoft,* 564 U.S. at 101. We see no basis for inferring a departure in the present context.

We recognize that the Board's Precedential Opinion Panel analyzed this issue in *Proppant Express Investments, LLC v. Oren Technologies, LLC*, No. IPR2018-00914, Paper 38 (P.T.A.B. Mar. 13, 2019), and came to the opposite conclusion. *Id.* at 5 ("§ 315(c) permits a petitioner to be joined to a proceeding in which it is already a party."). But that conclusion, which allowed same-party joinder, is incorrect under the unambiguous meaning of the statute. The Board's conclusion in *Proppant* hinged on the statute's use of the phrase "any person." *Id.* The Board reasoned that because the word "any" necessarily carries "an expansive meaning," the phrase "any person" provides the Director with the authority, should he wish, to join "every person who properly files a petition that warrants institution," including oneself. *Id.* at 5–6 (internal quotations and citations omitted). But the full phrase used by § 315(c) is that the Director "may join as a party [to the IPR] any person" who meets certain requirements (including, i.e., having its own petition that warrants institution). The phrase "join as a party to a proceeding" on its face limits the range of "person[s]" covered to those who, in normal legal discourse, are capable of being joined as a party to a proceeding (a group further limited by the own-petition requirements), and an existing party to the proceeding is not so capable. A statute saying that "a person may marry any person who is older than 16 . . . " would not, by virtue of the "any person" language, authorize marriage to oneself. The word "marry" necessarily requires another person. The "join as a party" language does the same here. A party cannot logically be "join[ed] as a party" in a proceeding if it is already a party to that proceeding.

Accordingly, we hold that the clear and unambiguous meaning of § 315(c) does not authorize joinder of two proceedings, and does not authorize the Director to join a person to a proceeding in which that person is already a party.

6

The Board's interpretation of § 315(c) is contrary to the unambiguous meaning of the statute for a second reason. Setting aside the question of same-party joinder, the language in § 315(c) does no more than authorize the Director to join 1) a person 2) as a party, 3) to an already instituted IPR. This language does not authorize the joined party to bring new issues from its new proceeding into the existing proceeding. As discussed above, § 315(c) authorizes joinder of a person as a party, not "joinder" of two proceedings.

The strongest case that Facebook can make is that the statute does not expressly *prohibit* the introduction of new issues in the joined proceedings. Appellant's Reply and Response Br. 28 ("The statute . . . does not prohibit the consideration of new claims or issues in the joined proceedings."); *id.* ("Nothing in this text states or implies that when a person joins an instituted IPR, that person cannot address any new claims or issues beyond the already-instituted IPR.").

The lack of an express prohibition, however, does not make § 315(c) ambiguous as to whether it permits joinder of new issues. Rather, it simply permits the Director, at his or her discretion, to join any person *as a party to an already-instituted IPR*. *See Thryv*, 140 S. Ct. at 1374 ("[T]he §315(b)-barred *party* can join a proceeding initiated by another petitioner." (emphasis added)). The already-instituted IPR to which a person may join as a party is governed by its own petition and is confined to the claims and grounds challenged in that petition. *SAS*, 138 S. Ct. at 1356 ("[T]he petitioner's petition, not the Director's discretion, is supposed to guide the life of the litigation."); *id.* at 1355 ("Congress chose to structure a process in which it's the petitioner, not the Director, who gets to define the contours of the proceeding."). We therefore conclude that the unambiguous meaning of § 315(c) is that it allows the Director discretion to join a person *as a party* to an already-

instituted IPR but does not permit the joined party, by virtue of the joinder decision alone, to bring new issues from a second proceeding into the existing proceeding. Any other conclusion would improperly join proceedings, rather than parties—which § 315(c) does not authorize.

Our interpretation of § 315(c) is also consistent with the statutory scheme of § 315 as a whole, as illustrated by the neighboring subsections. For example, as noted previously, § 315(d) specifically contemplates "consolidation" of two proceedings and their respective issues. Section 315(d) recites:

> [D]uring the pendency of an inter partes review, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other proceeding or matter may proceed, including providing for . . . consolidation . . . of any such matter or proceeding.

35 U.S.C. § 315(d). This section thus authorizes consolidation of, for example, multiple instituted (and therefore timely) IPRs and the issues contained therein, even when the issues may not be identical. There is a clear distinction between § 315(c), which refers to the joinder of a person as a party, and § 315(d), which refers to the consolidation of multiple proceedings and the issues in each. Construing § 315(c) to permit joinder of proceedings, and all the new issues therein, would render superfluous the reference to consolidation in § 315(d), which is disfavored in statutory interpretation. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Again, construing § 315(c) to allow unfettered joinder of proceedings is inconsistent with all common understandings of the terms "joinder" and "consolidation."

Our interpretation is further supported by the legislative history of § 315(c).  The final committee report states that under § 315(c), "[t]he Director may allow other petitioners to *join an inter partes . . . review.*"   H.R. Rep. No. 112-98, pt. 1, at 76 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 67, 100 (emphasis added).  Like the statutory language itself, this contemplates allowing a person to join an already-instituted IPR as a party but not to bring with it its new issues.  *See Nidec*, 868 F.3d at 1020 (Dyk, J., concurring).

Facebook too relies on the legislative history, arguing that the following statement from Senator Kyl, particularly the final sentence in the excerpt below, shows that § 315(c) explicitly contemplates joinder of new issues:

> Sections 315(c) and 325(c) allow joinder of inter partes and post-grant reviews.  The Office anticipates that joinder will be allowed as of right—if an inter partes review is instituted on the basis of a petition, for example, a party that files an identical petition will be joined to that proceeding, and thus allowed to file its own briefs and make its own arguments.  If a party seeking joinder also presents additional challenges to validity that satisfy the threshold for instituting a proceeding, the Office will either join that party and its new arguments to the existing proceeding, or institute a second proceeding for the patent.

157 Cong. Rec. S1360, S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).  We disagree for at least two reasons.

First, it is unclear which portions of Senator Kyl's statement refer to § 315(c) and which refer to § 325(c).  The final sentence regarding "additional challenges" may relate to post-grant reviews under § 325(c), which is titled "joinder" but expressly contemplates *consolidation* of issues presented in multiple petitions.  *See* 35 U.S.C. § 325(c) ("If more than 1 petition for a post-grant review under this

chapter is properly filed against the same patent and the Director determines that more than 1 of these petitions warrants the institution of a post-grant review under section 324, the Director may consolidate such reviews into a single post-grant review.").

Second, this single, ambiguous comment from one senator cannot override the final committee report, much less the plain statutory language. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.' We have eschewed reliance on the passing comments of one Member." (alteration in original) (citation omitted) (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969))); *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("We will not . . . allow[] ambiguous legislative history to muddy clear statutory language.").

Finally, Facebook argues that there are important policy rationales that run counter to our interpretation. Appellant's Reply and Response Br. 37–38. Specifically, Facebook argues that it was appropriate for the Board to permit joinder given the unique facts of this case, where at the end of the one-year time bar Windy City had not yet identified which of the 830 claims of four patents it was asserting against Facebook. Facebook submits that the view we adopt today leaves a dangerous incentive for patent owners to file suit on patents containing hundreds of claims and then "steadfastly delay[] the litigation through various stalling tactics [and] . . . 'run out the clock' on the one year bar under § 315(b) before identifying asserted claims." *Id.* at 37. This, according to Facebook, leaves accused infringers "stuck between a rock and a hard place" with only two options: (1) file petitions addressing each of the hundreds of claims; or (2) file petitions on a fraction of

the claims with the risk that the patent owner will assert claims that were not covered by the petitions. *Id.* at 37–38.

We do not disagree with Facebook that the result in this particular case may seem in tension with one of the AIA's objectives for IPRs "to provide 'quick and *cost effective* alternatives' to litigation in the courts." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 741 (Fed. Cir. 2016) (emphasis added) (quoting H.R. Rep. No. 112-98, pt. 1, at 48 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 67, 78). Indeed, it is fair to assume that when Congress imposed the one-year time bar of § 315(b), it did not explicitly contemplate a situation where an accused infringer had not yet ascertained which specific claims were being asserted against it in a district court proceeding before the end of the one-year time period. We also recognize that our analysis here may lead defendants, in some circumstances, to expend effort and expense in challenging claims that may ultimately never be asserted against them.

Petitioners who, like Facebook, are faced with an enormous number of asserted claims on the eve of the IPR filing deadline, are not without options. As a protective measure, filing petitions challenging hundreds of claims remains an available option for accused infringers who want to ensure that their IPRs will challenge each of the eventually asserted claims. An accused infringer is also not obligated to challenge every, or any, claim in an IPR. Accused infringers who are unable or unwilling to challenge every claim in petitions retain the ability to challenge the validity of the claims that are ultimately asserted in the district court. Accused infringers who wish to protect their option of proceeding with an IPR may, moreover, make different strategy choices in federal court so as to force an earlier narrowing or identification of asserted claims. Finally, no matter how valid, "policy considerations cannot create an ambiguity when the words on the page are clear." *SAS*, 138 S. Ct. at 1358. That job is left to Congress and not to

the courts. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."). In the meantime, we must abide by the clear and unambiguous statutory language.[8]

In sum, we conclude that the clear and unambiguous language of § 315(c) does not authorize same-party joinder, and also does not authorize joinder of new issues, including issues that would otherwise be time-barred.

7

We now turn to the question of what, if any, deference is owed to the PTO's interpretation of § 315(c). Because we conclude that the clear and unambiguous language of § 315(c) does not authorize same-party joinder or joinder of new issues, we need not defer to the PTO's interpretation of § 315(c). *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the

---

[8]    District courts may alleviate or altogether avoid situations like this by adopting patent local rules or standing orders that require early identification of infringement contentions. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) ("[T]he local rules in question are . . . designed specifically to 'require parties to crystallize their theories of the case early in the litigation' so as to 'prevent the "shifting sands" approach to claim construction.'" (quoting *Atmel Corp. v. Info. Storage Devices Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998))). Indeed, most courts with patent-heavy dockets have done just that, indicating that the "policy" reasons used to justify such an odd reading of the statutory scheme are less compelling than Facebook contends.

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). "Even under *Chevron*, we owe an agency's interpretation of the law no deference unless, after 'employing traditional tools of statutory construction,' we find ourselves unable to discern Congress's meaning." *SAS*, 138 S. Ct. at 1358 (quoting *Chevron*, 467 U.S. at 843 n.9). As explained above, after applying the traditional tools of statutory interpretation, we are left with no ambiguity that could warrant deference.

8

In light of the foregoing, we hold that the Board's joinder decisions, which allowed Facebook to join itself to a proceeding in which it was already a party, and to add otherwise time-barred issues to the IPRs, were improper under § 315(c).[9] We therefore vacate-in-part the Board's final written decisions with respect to the improperly added claims. Specifically, the Board's final written decision on the '245 patent is vacated with respect to claims 19 and 22–25, and the Board's final written decision on the '657 patent is vacated with respect to claims 203, 209, 215, 221, 477, 482, 487, and 492, all of which were added to the proceedings through improper joinder. With respect to these claims, we remand to the Board, in order for the Board to consider whether the termination of the instituted proceedings related to the two late-filed petitions finally resolves those proceedings.

---

[9]    As noted above, to the extent the Board's joinder decision could be read as having joined Facebook's two IPR *proceedings*, rather than having joined Facebook as a party to its own existent proceeding, that was also improper and contrary to the unambiguous language of § 315(c).

## B

We now turn to the technical merits of this appeal and review the Board's obviousness determinations that are not vacated based on our holding on joinder.

### 1

Obviousness is a question of law based on underlying factual determinations. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015). We review the Board's ultimate obviousness determination de novo and underlying factual findings for substantial evidence. *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016). Substantial evidence is "more than a mere scintilla" and means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We review the Board's determination of the broadest reasonable interpretation of the claim language de novo. *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1360 (Fed. Cir. 2015).[10]

### 2

We begin with the '245 patent. As mentioned above, the disputed claims of the '245 patent relate to the ability

---

[10]  We note that the PTO has since changed the claim construction standard used in IPR proceedings. *See* 37 C.F.R. § 42.100(b); *Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, 83 Fed. Reg. 51,340, 51,340 (Oct. 11, 2018). The new standard applies only to petitions filed on or after November 13, 2018, and therefore does not impact these IPRs, which were to be construed using the broadest reasonable interpretation in light of the specification. *Cuozzo*, 136 S. Ct. at 2146.

to handle "out-of-band" information (i.e., information that a participator computer may not be able to present on its own).

In its original, timely petition for IPR of the '245 patent, Facebook challenged claims 1–15, 17, and 18. The Board instituted review of claims 1–5, 7, and 9–14 based on obviousness over Roseman,[11] Rissanen,[12] Vetter,[13] Pike,[14] and Westaway;[15] and instituted review of claims 6, 8, 15, 17, and 18 based on obviousness over the same references and Lichty.[16] As discussed above, claims 19 and 22–25 were improperly added through joinder.

In its final written decision on the '245 patent, the Board held that Facebook had failed to show by a preponderance of the evidence that claims 1–15, 17–19, and 22–25 are unpatentable as obvious. *'245 Final Written Decision*, at 34. Facebook appeals the Board's determination that these claims are not unpatentable as obvious. As previously discussed, joinder of claims 19 and 22–25 was improper, so the final written decision is vacated with respect to those claims. Here, we address remaining claims 1–15, 17, and 18.

The disputed limitation of claim 1 of the '245 patent is:

---

[11]    U.S. Patent No. 6,608,636 (J.A. 1195–227).

[12]    European Patent Application No. 0621532 (J.A. 1228–39).

[13]    Ronald J. Vetter, *Videoconferencing on the Internet*, IEEE Computer Society 77–79 (Jan. 1995).

[14]    Mary Ann Pike et al., *Using Mosaic* (1994) (J.A. 1246–397).

[15]    U.S. Patent No. 5,226,175 (J.A. 1398–408).

[16]    Tom Lichty, The Official America Online for Macintosh Membership Kit & Tour Guide (2nd ed. 1994) (J.A. 1409–529).

the second of said participator computers internally determines whether or not the second of the participator computers can present the communication, if it is determined that the second of the participator computers can not present the communication then obtaining an agent with an ability to present the communication, and otherwise presenting the communication independent of the first of the independent participator computers and the computer.

'245 patent at claim 1. Independent claim 7 recites substantially the same limitation as claim 1. *See id.* at claim 7. All of the remaining claims at issue depend from claim 1 or 7.

Facebook conceded before the Board that the primary reference, Roseman, does not disclose the disputed limitation. *'245 Final Written Decision*, at 29 ("Indeed, Petitioner admits that 'Roseman does not appear to contemplate the scenario in which the second participant computer ***internally determines that it <u>cannot</u> present the communication*.'" (emphasis in original) (quoting J.A. 457 (Petition))). Facebook relied on Pike or, alternatively, Westway to satisfy this limitation. Pike describes a system where a user can manually search for and install software to open a specific file type, and Westway describes a program that automatically obtains a software to present a communication if the program determines that it cannot. *See id.* at 18–19.

The Board determined that Facebook failed to explain "why a skilled artisan would have incorporated this feature into Roseman's local computers (participator computers) in light of Roseman's system, which processes images *at the host*, not the local computers." *Id.* at 29 (emphasis added). The Board reasoned that:

The most logical reading of Roseman is that its local computers already have software sufficient to

> render the common image that the host provides to them. Thus, Petitioner's argument that Pike and Westaway would have been applied because of the possibility that a meeting participant would place a document on the table that other participants would not have the correct software to view is not applicable to Roseman. Petitioner has not explained why, in the case where the *host* is unable to present a communication received from a local computer as part of its common image, a local computer would make an internal determination to that effect, or why users at the local computers would seek out software to present the communication.

*Id.* at 29–30 (citation omitted). In reaching this conclusion, the Board considered Facebook's expert's testimony but determined that it did not "add materially to Petitioner's unpersuasive attorney argument" because it "merely repeat[ed] Petitioner's argument, nearly verbatim, without citation to the basis for his testimony." *Id.* at 30. Substantial evidence supports the Board's assessment and weighing of this evidence, and we decline to reweigh the evidence on appeal. *See In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011) ("This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings.").

On appeal, Facebook argues that the Board's underlying understanding of Roseman (that it processes images *at the host*, not the local computers) was incorrect. As explained below, substantial evidence supports the Board's understanding of Roseman, which in turn supports its determination that claim 1 would not have been obvious over the asserted prior art.

Facebook argues that there are at least two instances where Roseman processes images at the local participant computers—the "note passing" feature and the "document

sharing" feature. Appellant's Opening Br. 29–35. The note-passing feature in Roseman allows a conference participant to send a private note to another participant, which only the recipient can view. Roseman explains that "[w]hen the other party [recipient] sees the note on his picture, as in FIG. 12, he can drag it to a *private viewing area*, double-click it, and read it. No other people are aware of the passed note." J.A. 1223, col. 9 ll. 28–31 (emphasis added). The document sharing feature allows a participant to drag a data file from outside the conference room window onto the table of the conference room to share it with other participants who can open it. These two features, Facebook argues, show that Roseman generates images at the local participant computers.

Facebook's argument requires us to agree that the area outside the virtual conference room of Roseman is *outside the software system of Roseman entirely*, rather than just outside the virtual meeting room. Referring to Figure 10 of Roseman below, Facebook's position is that the area outside of the meeting room (everything except the box in the bottom left corner) is outside of the Roseman software entirely and is on the participants' local desktops:

**FIG. 10**



DOCUMENT TO BE PLACED ON TABLE

Appellant's Opening Br. 29–30 (citing J.A. 1204, fig. 10). Facebook cites no evidence supporting this position. Without any citation or support, Facebook simply equates the

area outside of the conference room with "the local computer," *id.* at 29, 31, or "the user's desktop," *id.* at 30.

As Windy City notes, there is substantial evidence to support the understanding that the entire area shown in Figure 10 is within the Roseman software system, with the box in the bottom left corresponding to a specific meeting room within the system. *See* Cross-Appellant's Response Br. 21–22. Roseman does not state that the area outside of the meeting room in Figure 10 is "outside the system" or "outside the software." Roseman refers to this area outside the meeting room as a "private viewing area." J.A. 1223, col. 9 ll. 28–31 (explaining that once "the other party sees the note on his picture, as in FIG. 12, he can drag it to a private viewing area, double-click it, and read it"). Referring to this area as the "private viewing area" suggests that this is still part of the Roseman system and that the host can create the images seen in this private area rather than the images being created locally.

Facebook's position, which is based on attorney argument rather than evidence in the record, does not persuade us that the Board's understanding of Roseman's system is incorrect. It also does not undermine the substantial evidence that supports the Board's finding that claim 1 would not have been obvious over the prior art of record. We therefore affirm the Board's holding that claims 1–15, 17, and 18 of the '245 patent are not unpatentable as obvious over the asserted prior art.

The final written decision on the '245 patent is therefore affirmed-in-part (claims 1–15, 17, and 18) and vacated-in-part (claims 19 and 22–25).

3

We now turn to the '657 patent. As mentioned above, the '657 patent relates generally to the "censorship" features that control the dissemination of information among participator computers.

In its original, timely petition for IPR of the '657 patent, Facebook challenged claims 189, 334, 342, 348, 465, 580, 584, and 592.  The Board instituted review of all of the challenged claims based on obviousness over Roseman, Rissanen, Vetter, Pike, and Lichty.  As discussed above, claims 203, 209, 215, 221, 477, 482, 487, and 492 were improperly added through joinder.

In its final written decision on the '657 patent, the Board held that Facebook had shown by a preponderance of the evidence that claims 189, 334, 342, 348, 465, 477, 482, 487, 492, 580, 584, and 592 are unpatentable as obvious but had failed to show that claims 203, 209, 215, and 221 are unpatentable as obvious.  *'657 Final Written Decision*, at 56.

Facebook appeals the Board's determination that claims 203, 209, 215, and 221 are not unpatentable as obvious.  As previously discussed, joinder of each of these claims was improper, so the final written decision is vacated with respect to those claims.  We therefore do not address the technical merits of Facebook's appeal of these claims.

Windy City's cross-appeal challenges the Board's determination that claims 189, 334, 342, 348, 465, 477, 482, 487, 492, 580, 584, and 592 are unpatentable as obvious.  As previously discussed, joinder of claims 477, 482, 487, and 492 was improper, so the final written decision is vacated with respect to those claims.  Here, we address remaining claims 189, 334, 342, 348, 465, 580, 584, and 592.

The claims at issue recite a "database" that stores "tokens" (e.g., user identity information).  Roseman teaches the use of "keys" provided to users that enable users to access a conference "room" through a "door" (i.e., using the key to "open the door").  J.A. 1223, col. 9 ll. 34–48, 54–55, col. 10 ll. 61–64.  Roseman describes that each meeting room "'knows' about each key and its invitation level." J.A. 1223, col. 9 ll. 49–51.  However, the Board found that

Roseman does not explicitly describe the underlying structure that stores the keys in the conference system. *'657 Final Written Decision*, at 29–30. Facebook argued that Rissanen teaches storing user authentication information, such as user identity information and passwords, in a database, and that such teaching would have been applicable to the keys of Roseman. *Id.* at 30. The Board agreed and found that "Rissanen teaches a database that stores data with persistence and tools for interacting with the database." *Id.* at 31.

The issue before the Board, therefore, was whether it would have been obvious to combine Roseman and Rissanen to store the keys in a "database," as claimed. The Board considered the evidence and concluded that the use of a database, as described in Rissanen, "would be a straightforward and predictable choice for storing Roseman's keys." *Id.*

In its cross-appeal, Windy City argues that the Board erred in finding that it would have been obvious to combine Roseman and Rissanen. Windy City argues that the Board's analysis was infected by hindsight and that it did not adequately explain *how* someone skilled in the art would build the combined Roseman and Rissanen system. Cross-Appellant's Response Br. 35–39; *see also id.* at 36 (arguing that carrying out the combination "would take substantial creativity"); *id.* at 38 (arguing that the Board "does not address the difficulty" of making this combination). We find no legal error in these aspects of the Board's obviousness analysis.

As an initial matter, "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton," so the fact that it would take some creativity to carry out the combination does not defeat a finding of obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007); *see also ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016) ("The rationale of *KSR* does not support [the]

theory that a person of ordinary skill can only perform combinations of a puzzle element A with a perfectly fitting puzzle element B."). The Board also correctly rejected Windy City's argument about the difficulty of physically creating the combination, noting that Facebook was not arguing that Rissanen's database would be bodily incorporated into Roseman's system. *'657 Final Written Decision*, at 35. Regardless, "[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference." *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) (quoting *In re Keller*, 642 F.2d 413, 425 (C.C.P.A. 1981)).

The only remaining issue is whether the Board's factual findings underpinning its determination are supported by substantial evidence. We hold that they are. There is substantial evidence of record supporting the Board's finding that the use of a database "would be a straightforward and predictable choice for storing Roseman's keys." *'657 Final Written Decision*, at 31. For example, Facebook's expert Dr. Lavian testified that "[d]atabase technologies predated the [challenged patents] by decades, and it was known to use databases to store user identity and authentication information ('tokens')." J.A. 6249, ¶ 51. Dr. Lavian also explained why a person of skill in the art would have been motivated to combine Roseman with Rissanen, specifically that "[a] skilled artisan would understand that the user identity and password information in Rissanen is analogous to the 'keys' in Roseman, and would be motivated to make this combination." J.A. 6250, ¶ 52. Substantial evidence supports the Board's determination that it would have been obvious to store the keys in Roseman in a database. We therefore affirm the Board's holding that claims 189, 334, 342, 348, 465, 580, 584, and 592 of the '657 patent are unpatentable as obvious over the asserted prior art.

The final written decision on the '657 patent is therefore affirmed-in-part (claims 189, 334, 342, 348, 465, 580, 584, and 592) and vacated-in-part (claims 203, 209, 215, 221, 477, 482, 487, and 492).

4

We next address the '552 patent, which also relates generally to "censorship" features.

Facebook's petition for IPR challenged claims 1–61 and 64 of the '552 patent. The Board instituted review of claims 1–59 and 64 based on obviousness over Roseman, Rissanen, Vetter, Pike, and Lichty. The Board did not institute review of claims 60 and 61.[17]

In its final written decision on the '552 patent, the Board held that Facebook had shown by a preponderance of the evidence that claims 2, 3, 5, 7, 10–17, 59, and 64 are unpatentable as obvious but had failed to show that claims 1, 4, 6, 8, 9, and 18–58 are unpatentable as obvious. *'552 Final Written Decision*, at 59.

Facebook appeals the Board's determination that claims 1, 4, 6, 8, 9, and 18–58 are not unpatentable as obvious. Facebook's argument focuses on the following "authorization step" of claim 1:

the controller computer system controlling real-time communications by:

storing each said user identity and a respective authorization to send multimedia data, the multimedia data comprising graphical data; and

if permitted by the user identity corresponding to one of the participator computers, allowing the one

---

[17]    *See supra* note 3.

of the participator computers to send multimedia
data to another of the participator computers.

'552 patent at claim 1.

Before the Board, Facebook argued that these authorization limitations were satisfied by Roseman, which describes using stored keys, associated with user identities, for controlling admission to a particular conference. *'552 Final Written Decision*, at 53. Facebook argued that the authorization limitation was satisfied by Roseman because a user who is not authorized to *access* a room could not *send* multimedia data to conference room participants. The Board rejected this argument and determined that Roseman only describes a key granting a user *admission* to a virtual conference room and does not describe keys as determining *what a user can do* in a conference room once admitted. *Id.* The Board reasoned that "it does not follow that the key [of Roseman] provides permissions for behavior within a conference room, such as authorization to send multimedia data." *Id.*; *see also id.* ("We are not persuaded that such a key [granting access to a conference room] constitutes stored authorization to engage in certain activities once admitted.").

40          FACEBOOK, INC. v. WINDY CITY INNOVATIONS, LLC

On appeal, Facebook argues that the Board erred by narrowly construing the authorization limitations to require determining *what a user can do in a conference room*, not just *whether they should be admitted*. Appellant's Opening Br. 42–44. We do not think the Board erred in its claim construction. Most importantly, the Board's construction is supported by the intrinsic evidence, including Figure 3 (below), which describes checking the user's permission prior to authorizing the user to send multimedia data.



'552 patent at fig. 3 (highlighting added) (Block 50), col. 6 ll. 20–23 ("the logic flows to Block 50, which tests

whether a user has post permission.  If the user has post permission, the logic flows to Block 48").

Under the Board's construction, which we think is correct, the Board's determination that Roseman does not satisfy this limitation is supported by substantial evidence. As described above, the Board considered and rejected Facebook's arguments and determined that Roseman only describes a key granting a user *admission* to a virtual conference room and did not describe keys as determining *what a user can do* in a conference room once admitted. *'552 Final Written Decision*, at 53.  This determination is supported by substantial evidence, including the disclosure of Roseman itself.  *See id.* (citing J.A. 1223 col. 9 ll. 34–55, col. 10 ll. 61–65).  And, like the Board, we are also not persuaded that a key that grants admission also includes an authorization to send multimedia data in a conference room.  *See id.*  We therefore affirm the Board's holding that claims 1, 4, 6, 8, 9 and 18–58 of the '552 patent are not unpatentable as obvious over the asserted prior art.

Windy City's cross-appeal challenges the Board's determination that claims 2, 3, 5, 7, 10–17, 59, and 64 are unpatentable as obvious.  Windy City makes the same argument it made for the '657 patent—that it would not have been obvious to combine Roseman and Rissanen.  For the same reasons explained above with respect to the '657 patent, substantial evidence supports the Board's finding that it would have been obvious to combine Roseman and Rissanen to arrive at the claimed invention of the '552 patent.  We therefore affirm the Board's holding that claims 2, 3, 5, 7, 10–17, 59, and 64 of the '552 patent are unpatentable as obvious over the asserted prior art.

The final written decision on the '552 patent is therefore affirmed.

5

Finally, we address the '356 patent, which also relates generally to "censorship" features.

Facebook's petition for IPR challenged claims 1–9, 12, 14–28, 31, and 33–37 of the '356 patent. The Board instituted review of claims 1–5, 8, 9, 12, 14–16, 19–24, 27, 28, 31, 33–35, and 37 based on obviousness over Roseman, Rissanen, and Vetter; claims 6, 7, 17, 26, and 36 based on obviousness over Roseman, Rissanen, Vetter, and Pike; claims 18 and 25 based on obviousness over Westaway; and claims 6, 8, 15, 17, and 18 based on obviousness Roseman, Rissanen, Vetter, and Gosling.[18]

In its final written decision on the '356 patent, the Board held that Facebook had shown by a preponderance of the evidence that claims 1–9, 12, 15–28, 31, and 34–37 are unpatentable as obvious but had failed to show that claims 14 and 33 are unpatentable as obvious. *'356 Final Written Decision*, at 59.

Facebook appealed the Board's determination that claims 14 and 33 were not unpatentable as obvious. However, claims 14 and 33 were found unpatentable by the Board in a separate IPR from which Windy City voluntarily dismissed its appeal. *See Windy City Innovations, LLC v. Facebook Inc.*, No. 18-1543, ECF No. 24, at 1–2 (Fed. Cir. May 14, 2018) (dismissing appeal of No. IPR2016-01067). Windy City argued that Facebook's appeal regarding claims 14 and 33 of the '356 patent is moot. Cross-Appellant's Response Br. 5 n.1. Facebook agreed. Appellant's Reply and Response Br. 20 ("Facebook concurs that its appeal on claims 14 and 33 of the '356 patent is moot because

---

[18]    James Gosling, *Java Intermediate Bytecodes*, ACM SIGPLAN Workshop on Intermediate Representations (Jan. 1995).

those claims are finally invalid."). We agree that Facebook's appeal of the final written decision on the '356 patent is moot, dismiss that portion of Facebook's appeal, and therefore do not address claims 14 and 33.

Windy City's cross-appeal challenges the Board's determination that claims 1–9, 12, 15–28, 31, and 34–37 are unpatentable as obvious. Windy City makes the same argument it made for the '657 patent—that it would not have been obvious to combine Roseman and Rissanen. For the same reasons explained above with respect to the '657 patent, substantial evidence supports the Board's finding that it would have been obvious to combine Roseman and Rissanen to arrive at the claimed invention of the '356 patent. We therefore affirm the Board's holding that claims 1–9, 12, 15–28, 31, and 34–37 of the '356 patent are unpatentable as obvious over the asserted prior art.

The final written decision on the '356 patent is therefore affirmed-in-part (claims 1–9, 12, 15–28, 31, and 34–37).

6

We have considered the parties' remaining arguments on the technical merits of the appeal and cross-appeal and find them unpersuasive.

III

We hold that the clear and unambiguous language of § 315(c) does not authorize same-party joinder or joinder of new issues. The Board's joinder decisions in this case, which allowed Facebook to add otherwise time-barred issues to its IPRs, were therefore improper under § 315(c). We accordingly vacate the Board's final written decisions with respect to the claims improperly added through joinder. We also hold that substantial evidence supports the Board's obviousness determinations.

44          FACEBOOK, INC. v. WINDY CITY INNOVATIONS, LLC

In sum, the Board's final written decision on the '245 patent is affirmed with respect to claims 1–15, 17, and 18 and vacated and remanded with respect to claims 19 and 22–25.  The Board's final written decision on the '657 patent is affirmed with respect to claims 189, 334, 342, 348, 465, 580, 584, and 592 and vacated and remanded with respect to claims 203, 209, 215, 221, 477, 482, 487, and 492. The Board's final written decision on the '552 patent is affirmed.  The Board's final written decision on the '356 patent is affirmed with respect to claims 1–9, 12, 15–28, 31, and 34–37.  Facebook's appeal of the Board's final written decision on the '356 is dismissed as moot with respect to claims 14 and 33.

**AFFIRMED-IN-PART, VACATED-IN-PART, DISMISSED-IN-PART, AND REMANDED**

COSTS

The parties shall bear their own costs.

# United States Court of Appeals
# for the Federal Circuit

---

**FACEBOOK, INC.,**
*Appellant*

**v.**

**WINDY CITY INNOVATIONS, LLC,**
*Cross-Appellant*

---

2018-1400, 2018-1401, 2018-1402, 2018-1403, 2018-1537,
2018-1540, 2018-1541

---

Appeals from the United States Patent and Trademark
Office, Patent Trial and Appeal Board in Nos. IPR2016-
01156, IPR2016-01157, IPR2016-01158, IPR2016-01159,
IPR2017-00659, IPR2017-00709.

---

Additional views by PROST, *Chief Judge*, PLAGER and
O'MALLEY, *Circuit Judges.*

The majority opinion concludes that the clear and un-
ambiguous language of 35 U.S.C. § 315(c) does not author-
ize same-party joinder and does not authorize joinder of
new issues. Because the opinion concludes that § 315(c) is
unambiguous, the majority does not address the question
of what, if any, deference is owed to the PTO's interpreta-
tion of § 315(c) by the Board's Precedential Opinion Panel
("POP") in *Proppant Express Investments, LLC v. Oren
Technologies, LLC*, No. IPR2018-00914, Paper 38 (P.T.A.B.
Mar. 13, 2019).

Contrary to our conclusions, however, both parties contend that a proper reading of § 315(c) unambiguously supports their respective—dramatically opposing—views of how the provision operates. Logically, while they do not say so expressly, the implication of their disagreement is that there is ambiguity in the statute that we do not perceive. Given this, and in light of the extensive attention the parties gave to the issue of deference, we address what our alternative holding would be if § 315(c) were deemed ambiguous.

Facebook argues that the POP opinion in *Proppant* deserves *Chevron* deference, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or at least *Skidmore* deference, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and that we should, thus, defer to the conclusion in the opinion that joinders like those at issue in this case are permissible. The government, following oral argument in this case and upon our request for its views, filed a brief likewise arguing for *Chevron*, or at least *Skidmore*, deference for the Board's interpretation of § 315(c). Having considered these arguments, we conclude that, were the statute ambiguous, we would alternatively resolve this matter in the same way. Specifically, we would find that no deference is due to the POP opinion in *Proppant* and that the most reasonable reading of § 315(c) is the one we adopt in our majority opinion.

I

At the time of the principal briefing in this appeal, different panels of the Board had issued conflicting nonprecedential decisions on the proper interpretation of § 315(c). *Compare, e.g., Target Corp. v. Destination Maternity, Corp.*, No. IPR2014-00508, Paper 28, at 6–17 (P.T.A.B. Feb. 12, 2015) (over dissenting opinion, permitting same-party joinder and joinder of new issues), *with SkyHawke Techs., LLC v. L&H Concepts, LLC*, No. IPR2014-01485, Paper 13, at 3–4 (P.T.A.B. Mar. 20, 2015) (rejecting same-

party joinder and joinder of new issues), *and Proppant Express Invs., LLC v. Oren Techs., LLC*, No. IPR2018-00914, Paper 21, at 4–6 (P.T.A.B. Nov. 8, 2018) (rejecting same-party joinder and joinder of new issues). As explained above, the Board in this case, over the "concerns" of the concurring APJs who expressed their "disagreement with the Director's interpretation," permitted Facebook to join itself as a party to the already instituted IPRs and allowed Facebook to join new claims to the proceedings. *See Facebook, Inc. v. Windy City Innovations, LLC*, No. IPR2017-00659, Paper 11 (P.T.A.B. July 31, 2017) (instituting IPR and granting joinder); *Facebook, Inc. v. Windy City Innovations, LLC*, No. IPR2017-00709, Paper 11 (P.T.A.B. August 1, 2017) (same).

In its principal briefing in this appeal, Facebook asked us to give *Chevron* deference to the Board's interpretation of § 315(c) in this case. But Facebook cited no authority that would support giving a nonprecedential Board decision *Chevron* deference. Indeed, we have never given such nonprecedential Board decisions *Chevron* deference. *See, e.g.*, *Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1318 (Fed. Cir. 2019) ("[W]e decline to give *Chevron* deference to these nonprecedential Board decisions, which do not even bind other panels of the Board."); *see also United States v. Mead Corp.*, 533 U.S. 218, 230–31 (2001).

In September 2018, while this appeal was pending, the Director outlined new procedures to create and govern the POP. The POP's purpose is to "establish binding agency authority concerning major policy or procedural issues, or other issues of exceptional importance in the limited situations where it is appropriate to create such binding agency authority through adjudication before the Board." Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10), at 3 (Sept. 20, 2018) (hereinafter "SOP 2"),

4                FACEBOOK, INC. v. WINDY CITY INNOVATIONS, LLC

https://www.uspto.gov/sites/default/files/docu-ments/SOP2%20R10%20FINAL.pdf.[1]

After the principal briefing was completed, but before we heard oral argument in this appeal, the Director convened a POP in *Proppant* to address the following issues:

> 1. Under 35 U.S.C. § 315(c) may a petitioner be joined to a proceeding in which it is already a party?
>
> 2. Does 35 U.S.C. § 315(c) permit joinder of new issues into an existing proceeding?
>
> 3. Does the existence of a time bar under 35 U.S.C. § 315(b), or any other relevant facts, have any impact on the first two questions?

*Proppant Express Invs., LLC v. Oren Techs., LLC*, No. IPR2018-00914, Paper 24, at 2 (P.T.A.B. Dec. 3, 2018). In *Proppant*, the POP held that § 315(c) "provides discretion to allow a petitioner to be joined to a proceeding in which it is already a party and provides discretion to allow joinder of new issues into an existing proceeding." *Proppant Express Invs., LLC v. Oren Techs., LLC*, No. IPR2018-00914, Paper 38, at 4 (P.T.A.B. Mar. 13, 2019). The POP also stated that "the Board will exercise this discretion only in limited circumstances—namely, where fairness requires it and to avoid undue prejudice to a party." *Id.* For example, the POP stated that the Board may exercise this discretion based on "actions taken by a patent owner in a co-

---

[1]    The POP is made up of three members of the Board. By default, the three members are the Director, the Commissioner for Patents, and the PTAB Chief Judge. The Director may replace the default members with the Deputy Director, the Deputy Chief Judge, or an Operational Vice Chief Judge and may determine that a panel of more than three members is appropriate. SOP 2, at 4.

pending litigation such as the late addition of newly asserted claims." *Id.*

Following *Proppant*, Facebook filed a notice of supplemental authority identifying the POP opinion and arguing that it deserved *Chevron* deference. *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF No. 56, at 1–2 (Fed. Cir. Mar. 20, 2019) ("The PTO's precedential statutory interpretation of § 315(c)—provided after notice, public comment, and hearing—is entitled to *Chevron* deference to the extent the Court finds textual ambiguity."). Windy City did not respond to Facebook's notice of supplemental authority.

After oral argument in this appeal, we invited the Director, who had not intervened in the case, to file a brief expressing his views on "what, if any, deference should be afforded to decisions of a Patent Trial and Appeal Board Precedential Opinion Panel ('POP'), and specifically to the POP opinion in *Proppant Express Investments, LLC v. Oren Technologies, LLC*, No. IPR2018-00914, Paper 38 (P.T.A.B. Mar. 13, 2019)." *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF No. 64, at 1–2 (Fed. Cir. Aug. 12, 2019) (per curiam). The government filed a brief in response, both Facebook and Windy City replied, and two amici filed briefs on the issue. *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF Nos. 76 (government), 79, 90 (amici), 91 (Facebook), 92 (Windy City).

In its response, the government argued that POP opinions interpreting the AIA, including *Proppant*, are entitled to *Chevron*, or at least *Skidmore*, deference. Facebook agreed with the government's position on deference. Windy City argued that POP opinions, including *Proppant*, are not entitled to any deference, as did the non-government Amici.

II

We apply *Chevron* deference to an agency's implementation of a particular statutory provision only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Mead*, 533 U.S. at 226–27. The Supreme Court has stated that "a very good indicator of delegation meriting *Chevron* treatment in [sic, *is] express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* at 229.

In the AIA, Congress delegated certain rulemaking authority to the Director. Notably, such delegation specifically provides that the Director shall "prescribe regulations." 35 U.S.C. § 316(a). For example, § 316(a)(4) recites that "[t]he Director shall *prescribe regulations* establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title." *Id.* at § 316(a)(4) (emphasis added). And, related to joinder, § 316(a)(12) recites that "[t]he Director shall *prescribe regulations* setting a time period for requesting joinder under section 315(c)." *Id.* at § 316(a)(12) (emphasis added).[2]

---

[2] The PTO prescribed the following regulation setting the time to file a request for joinder as one month after the date of institution of the IPR for which joinder is requested:

> (b) Request for joinder. Joinder may be requested by a patent owner or petitioner. Any request for joinder must be filed, as a motion under § 42.22, no later than one month after the institution date of

The express delegation of rulemaking authority, thus, is for the Director to promulgate regulations governing the conduct of IPRs. "[W]hen Congress expressly delegates to the Director the ability to adopt legal standards and procedures *by prescribing regulations*, the Director can only obtain *Chevron* deference if it adopts such standards and procedures *by prescribing regulations*." *See, e.g.*, *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1334 (Fed. Cir. 2017) (en banc) (Moore, J., concurring); *see id.* ("The Board may adopt a legal standard through a precedential decision in an individual case, but that legal standard will not receive *Chevron* deference when Congress only authorized the agency to prescribe regulations."). There is no indication in the statute that Congress either intended to delegate broad substantive rulemaking authority to the Director to interpret statutory provisions through POP opinions or intended him to engage in any rulemaking other than through the mechanism of prescribing regulations.

The AIA also includes an express delegation to the Board to "conduct each inter partes review instituted under this chapter." 35 U.S.C. § 316(c). Critically, Congress's delegation in the AIA for the adjudication of patentability in IPRs is not a delegation of authority to issue adjudicative decisions interpreting statutory provisions of the AIA. *See Gonzales v. Oregon*, 546 U.S. 243, 258 (2006) ("*Chevron* deference . . . is not accorded merely because the statute is ambiguous and an administrative official is involved. To begin with, the rule must be promulgated pursuant to authority Congress has delegated to the official."); *e.g.*, *Mead*, 533 U.S. at 231–32 (declining to give *Chevron* deference

---

any inter partes review for which joinder is requested. The time period set forth in § 42.101(b) shall not apply when the petition is accompanied by a request for joinder.

37 C.F.R. § 42.122(b).

8          FACEBOOK, INC. v. WINDY CITY INNOVATIONS, LLC

when, "[o]n the face of the statute . . . the terms of the congressional delegation give no indication that Congress meant to delegate authority to . . . issue . . . rulings with the force of law"). Thus, as with the Director, there is no indication in the statute that Congress intended to delegate authority to the Board to interpret statutory provisions through generally applicable POP opinions and there is nothing in the AIA that displaces our obligation under the Administrative Procedure Act to review the Board's legal conclusions without deference to the trial forum. *See HTC Corp., ZTE (USA) v. Cellular Commc'ns Equip.*, LLC, 877 F.3d 1361, 1367 (Fed. Cir. 2017) ("Under the APA, we review the Board's legal conclusions de novo and its factual findings for substantial evidence.").

Notably absent from the AIA, accordingly, is any congressional authorization, for either the Director or the Board, to undertake statutory interpretation through POP opinions. Thus, just as we give no deference to nonprecedential Board decisions, we see no reason to afford deference to POP opinions.

The government nonetheless argues that, because "Congress has expressly delegated authority to adjudicate IPRs" and to "enact regulations," "both of the quintessential forms of lawmaking authority discussed in *Mead*, 'adjudication [and] notice-and-comment rulemaking,' are present." Thus, the government argues, the Board's POP opinion interpreting § 315(c) should be entitled to *Chevron* deference. *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF No. 76, at 6 (alteration in original). We disagree.

According to the government, POP opinions are comparable to processes employed by other adjudicative bodies with rulemaking authority to which the Supreme Court has afforded *Chevron* deference. But in each of the examples cited by the government, the statutory delegation of authority is not analogous to the authority delegated by the

AIA.  For example, in the context of the Board of Immigration Appeals, Congress has charged the Attorney General with administering the Immigration and Nationality Act. The statute specifically provides that "a 'ruling by the Attorney General with respect to all questions of law shall be controlling.'"  *See Negusie v. Holder*, 555 U.S. 511, 516–17 (2009) (quoting 8 U.S.C. § 1103(a)(1)).  "The Attorney General, in turn, has delegated [its authority] to the BIA . . . in the course of considering and determining cases before it." *Id.* at 517 (internal quotation marks omitted).  In that context, the Supreme court concluded that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'"  *Id.* (quoting *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999)).

The government's other examples also include broader delegations of authority from Congress to the agency than the AIA affords.  *See, e.g.*, *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1345 (Fed. Cir. 2015) (noting that "[t]here is no dispute that Congress has delegated authority to the Commission to resolve ambiguity in Section 337 if the Commission does so through formal adjudicative procedures"); *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 398–99 (1996) (statutory grant in the National Labor Relations Act, 29 U.S.C. § 156, grants the National Labor Relations Board "authority from time to time to make, amend, and rescind, in the manner prescribed by [the Administrative Procedure Act], such rules and regulations as may be necessary to carry out the provisions of this subchapter"); *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 599 F.3d 705, 710 (D.C. Cir. 2010) (finding that the statute "clearly delegated to the Commission" the authority "to implement and thereby to interpret" the statutory provision in question).

The organization of the PTO is not analogous to the agencies in the examples cited by the government.  Unlike those examples, which have a single delegee with both rulemaking and adjudicatory powers, Congress organized the

PTO with certain powers delegated to the Director, and others delegated to the Board. *See, e.g.*, 35 U.S.C. § 2 (delegating "specific powers" to the "Office," subject to the Secretary of Commerce), § 3 (vesting powers and duties of the Office in the Director), § 6 (establishing the Board and describing its "[d]uties"). Most notably, and as discussed above, in the AIA Congress expressly divided the delegation of rulemaking and adjudicatory powers between the Director and the Board. Congress delegated the power to prescribe certain regulations to the Director, 35 U.S.C. § 316(a); *see also id.* at § 316(b), and delegated the power to adjudicate IPRs to the Board, *id.* at § 316(c).

As the Supreme Court clarified in *Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 154 (1991), an agency with a bilateral structure differs from an agency with a unilateral structure:

> [I]n traditional agencies—that is, agencies possessing a *unitary* structure—adjudication operates as an appropriate mechanism not only for factfinding, but also for the exercise of delegated lawmaking powers, including lawmaking by interpretation. . . . because the unitary agencies in question also had been delegated the power to make law and policy through rulemaking.

*Id.* at 154 (emphasis added). Conversely, in agencies where Congress has not expressly delegated both rulemaking and adjudicative authority to a single delegee, as in the PTO, adjudication may not operate as an appropriate mechanism for the exercise of rulemaking. *See id.* at 154–55.

In light of the limited authority delegated by the AIA, we decline to defer to the POP opinion on this issue of statutory interpretation—a pure question of law that is not

within the specific expertise of the agency.[3] *Aqua Prods.*, 872 F.3d at 1320 (plurality opinion) ("Because *Chevron* deference displaces judicial discretion to engage in statutory interpretation, it requires a relatively formal expression of administrative intent, one with the force and effect of law."); *see also id.* at 1324 (Moore, J., concurring) ("The point of *Chevron* is to encourage courts to defer to agencies on issues that 'implicate[] agency expertise in a meaningful way.'" (quoting *Sandoval v. Reno*, 166 F.3d 225, 239 (3d Cir. 1999) (alteration in original)))); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (explaining that deference is unwarranted "when a court concludes that an interpretation does not reflect an agency's authoritative, *expertise-based*, 'fair[, or] considered judgment.'" (alteration in original) (emphasis added) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (citing *Mead*, 533 U.S. at 229–31). The interpretation of § 315(c) and the proper understanding of the interplay between § 315(b) and (c) are pure questions of law that do not implicate the PTO's expertise. *See id.* POP opinions, like all Board opinions, are subject to the well-established standard of review directed by the APA. Notably, the government refuses to address the question of how far the position it takes on *Chevron* deference in this case would extend into our review of interpretations of patentability provisions addressed in other POP opinions. *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF No. 76, at 5 n.2 ("[T]his brief does not address whether the POP's interpretations of patentability provisions of the Patent Act, 35 U.S.C. §§ 101–105, would be

---

[3] We have previously held that "an agency without substantive rulemaking authority cannot claim *Chevron* deference for statutory interpretations rendered in the course of administrative proceedings." *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1382 n.6 (Fed. Cir. 2001).

entitled to *Chevron* deference."). In our view, this is no small matter.

Facebook also argues that the POP opinion in *Proppant* is entitled to *Chevron* deference because it was "provided after notice, public comment, and hearing." *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF No. 56, at 2. The government elaborates on this point, contending that the interpretation rendered in the POP opinion in *Proppant* resulted from a "highly structured process," "following notice to the public; . . . further written briefing by the parties and six amici; and an oral hearing." *Facebook, Inc. v. Windy City Innovations, LLC*, No. 18-1400, ECF No. 76, at 6.

To the extent that Facebook or the government argues that this is comparable to notice-and-comment rulemaking, we disagree. While the POP in *Proppant* issued an order listing the issues it intended to review, solicited briefs from the parties and amici, and held an oral hearing, the POP procedure falls short of traditional notice-and-comment rulemaking that could receive *Chevron* deference.

For example, the announcement that a POP has been convened and the issues it will review is not published in the Federal Register. Instead, it is issued as an order in the docket of the case. *See* SOP 2, at 7 ("[T]he Precedential Opinion Panel will enter an order notifying the parties and the public when the Precedential Opinion Panel has been designated and assigned to a particular Board case. The order will further identify the issues the Precedential Opinion Panel intends to resolve and the composition of the panel.").[4]    There is no formal opportunity for public

---

[4]    The process for convening a POP is even less visible to the public. The Director may convene a POP sua sponte. A party to a proceeding or a member of the Board may also

comment.  In fact, while the parties and amici were invited to file briefs in *Proppant*, the POP is not required to invite either.  *Id.* ("[T]he Precedential Opinion Panel *may* request additional briefing on identified issues, and, in appropriate circumstances, *may* further authorize the filing of amicus briefs." (emphases added)).

Finally, POP opinions, once decided, are not published in the Federal Register.  Instead, they are "posted to the Board's Precedential Decisions Web page." *Id.* at 8.  As a result, unlike final rules published in the Federal Register that may be challenged by interested parties in court, *see* 5 U.S.C. § 553, there is no opportunity for amici—to the extent they were invited—to challenge the final POP decision in court.  Indeed, in a number of circumstances, including where the parties have settled or a party does not have standing to appeal, the POP decision may not be subject to judicial review at all.

Issuing an order that a POP panel has been convened in a particular case and soliciting amicus briefs is not equivalent in form or substance to traditional notice-and-comment rulemaking.  *See, e.g.*, *Mead*, 533 U.S. at 231, 233 (denying *Chevron* deference to Customs' Classifications rulings, in which Customs "does not generally engage in notice-and-comment practice when issuing them," and describing Customs' practice in making them as "present[ing] a case far removed . . . from notice-and-comment process").  It is, instead, similar to what courts regularly do when seeking input which may help inform their adjudicatory function.  Nor is the precedential value of POP opinions a sufficient reason to afford *Chevron* deference.  *Id.* at 232 ("[P]recedential value alone does not add up to *Chevron* entitlement.").  The fact that legal determinations may be

recommend POP review by sending an email to the Board. *See* SOP 2, at 5–6.

binding on future Board panels does not enhance the standing of that determination when reviewed on appeal.

The law has long been clear that the Director has no substantive rule making authority with respect to interpretations of the Patent Act. *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336 (Fed. Cir. 2008). The Board, similarly, historically has been given adjudicatory authority—similar to that given to courts—to decide the issues presented to it. The Director's new delegation of authority in the AIA to establish procedures by regulation for the conduct of IPRs does not confer new statutory interpretive authority to the Board or change the standard under which we review their conclusions. And, the Board's authority to adjudicate IPRs does not confer rulemaking authority upon the Director that extends to all legal questions the Board adjudicates. As noted above, the PTO's structure has never been the type of unitary structure at issue in the cases upon which the government relies.

## III

In just three sentences at the end of its brief, the government asks for *Skidmore* deference if we do not apply *Chevron* deference. The government articulates the *Skidmore* standard and includes a single sentence of explanation of why it should apply. As an initial matter, such a conclusory assertion with no analysis is insufficient to develop and preserve the issue. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (citing *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.")).

Nevertheless, in our view, *Skidmore* deference does not apply. Under *Skidmore*, "'[t]he weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Mead*, 533 U.S. at 228 (second alteration in original) (quoting *Skidmore*, 323 U.S. at 140). The considerations listed in *Skidmore* weigh against affording deference here. For example, as explained in the majority opinion, we find the Director's interpretation of § 315(c) to be inconsistent with the plain language of the statute and therefore unpersuasive. *See PhotoCure ASA v. Kappos*, 603 F.3d 1372, 1376 (Fed. Cir. 2010) ("Even if some level of deference were owed to the PTO's interpretation, neither *Chevron* nor *Skidmore* permits a court to defer to an incorrect agency interpretation."); *Aqua Prod.*, 872 F.3d at 1316 ("[D]eference to misinterpretation of a statute is impermissible.").

IV

In sum, even if § 315(c) were ambiguous—which it is not—we would conclude in the alternative that on appeal the PTO's interpretation set forth in the POP opinion in *Proppant* is not deserving either of *Chevron* or *Skidmore* deference. We would then conclude—again in the alternative—that the most reasonable interpretation of § 315(c) is the one we afford it in our majority opinion.